IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LOIS BEAN,

       Plaintiff,

vs.                                                        Civ. No.  10-443 JP/CG

THE CURRY COUNTY BOARD OF
COUNTY COMMISSIONERS, ROBERT
O. SANDOVAL, DANIEL J. STOODARD,
FRANK BLACKBURN, WENDELL
BOSTICK, AND CALEB CHANDLER,
in their official capacity as members of the
Curry County Board of County Commissioners
and individually, and Lance Pyle in his official
capacity as Curry County Manager and
individually,

       Defendants.

## MEMORANDUM OPINION AND ORDER

On May 11, 2010, Defendants filed Defendants' Motion to Dismiss (Doc. No. 4)(Motion

to Dismiss).  Having reviewed the briefs and relevant law, the Court determines that the Motion

to Dismiss should be granted in that Counts II and III of the Civil Complaint for Employment

Discrimination (Doc. No. 1-1)(Complaint) should be dismissed without prejudice and Counts IV

through VII should be dismissed with prejudice.

*A.  The Complaint*

    *1.  Plaintiff's Factual Allegations*

This is an employment discrimination lawsuit brought by a female African-American who

was terminated from her employment as the Curry County Detention Administrator.  Plaintiff

held that position from December 15, 2008 until September 9, 2009.  The following is a summary

of the allegations Plaintiff makes in her Complaint.

Defendant Lance Pyle, the Curry County Manager, contacted Plaintiff in November 2008 to recruit her as the Curry County Detention Administrator.[1]  After Plaintiff toured the Curry County Detention Center (Detention Center), Plaintiff allegedly expressed "severe reservations" about the condition of the facility as well as the treatment of the inmates.  Complaint at ¶8.  *See also* Complaint at ¶10.  According to Plaintiff, the Detention Center also suffered from staffing issues and "severe morale problems."  *Id*. at ¶10.  When asked for an assessment of the Detention Center, Plaintiff allegedly told Defendant Pyle, Defendant Curry County Commissioner Robert Sandoval, Curry County Chairman Tete Hulder, and Curry County Finance Director Mark Lansford that the Detention Center was "'beyond help.'"  *Id*.

Plaintiff claims that Defendant Pyle promised her that, if she accepted the position as the Curry County Detention Administrator, he would assist her with any requests she made and that there was enough money to correct the deficiencies at the Detention Center.  Plaintiff also claims that Defendant Pyle indicated he would back her decisions.  Plaintiff contends that she decided to accept the position based on Defendant Pyle's promise, on behalf of Defendant Curry County Board of County Commissioners (Board), to fully support her and all reasonable requests by her to "fix the jail...."  *Id*. at ¶12.

According to Plaintiff, when she accepted the position as Curry County Detention Administrator, Defendant Pyle asked her to promise to remain at the Detention Center for at least three years.  Defendant Pyle later purportedly asked Plaintiff to remain at the Detention Center for at least five years.  Plaintiff asserts that finally, in August 2009, Defendant Pyle asked her to

---

[1]The Complaint states that Defendant Pyle contacted Plaintiff in "November 2009." Complaint at ¶7.  The Court assumes, however, that Defendant Pyle actually contacted Plaintiff in November 2008, prior to the beginning of Plaintiff's employment as Curry County Detention Administrator in December 2008.

remain at the Detention Center for at least ten years.  Plaintiff maintains that she promised Defendant Pyle that she would stay at the Detention Center for ten years.

Plaintiff avers that after she became the Curry County Detention Administrator, Defendant Curry County Commissioner Caleb Chandler, chair of the Curry County jail committee, informed "relatives employed by the jail and other employees of the Detention Center that they did not have to listen to [Plaintiff] or do anything Plaintiff told them to do."  *Id*. at ¶13. In response to Defendant Chandler's statements to the Detention Center employees, Defendant Pyle allegedly distributed a memorandum to the Detention Center employees "telling jail employees not to listen to Commissioners as they had no say in the administration of the jail.  He told them to stop going to Caleb Chandler because he was not allowed to get involved in Detention business."  *Id*.  Plaintiff contends that Detention Center employees were also given a copy of the chain of command.  According to Plaintiff, certain employees did not follow the chain of command and Defendant Chandler continued to challenge her authority.

Moreover, Plaintiff maintains that when she tried to raise serious issues with the jail committee, Defendant Chandler told her "'no one is talking to you.'" *Id*. at ¶16.  At jail committee meetings, Defendant Chandler would purportedly assign Plaintiff maintenance issues and would not allow Plaintiff to speak until the maintenance supervisor finished speaking or was not at a meeting.

Plaintiff also alleges that she was informed that Defendant Chandler did not like African-Americans or females.  According to Plaintiff, Defendant Chandler told Defendant Pyle that he did not like a woman operating the Detention Center and that he did not think a woman could operate the Detention Center. In addition, Plaintiff was allegedly "informed that Caleb Chandler was going to have the County Manager fire her and if the County Manager refused he was going

3

to fire him." *Id*. at ¶18.  Plaintiff asserts that Defendant Pyle told her that Defendant Chandler wanted to fire her and that Defendant Chandler wanted the Curry County Sheriff's Department to operate the Detention Center.

Furthermore, Plaintiff contends that Defendant Chandler falsely claimed at a Board meeting that Detention Center staff were leaving their jobs because of Plaintiff.  Plaintiff alleges that she responded to this claim by submitting a report which demonstrated that employee "turn over was the lowest it had ever been in a two year period." *Id*. at ¶19.

Plaintiff further alleges that her attempt to build a management team was "rebuffed" by Defendant Pyle. *Id*. at ¶15.  Plaintiff contends that her other attempts to address staffing needs, architectural deficiencies, and lack of training were, likewise, "rebuffed." *Id*.  Moreover, Plaintiff's concerns about illegal activities at the Detention Center were allegedly ignored repeatedly by the part-time contract attorney working for Curry County.

Plaintiff maintains that a month after she began working as the Curry County Detention Administrator, she was the subject of a "'secret investigation'" which concluded that she was doing "a good job." *Id*.  at ¶14.  Plaintiff alleges that "[o]ther similarly situated white employees were not subjected to such 'secret investigations.'" *Id*.

Plaintiff also claims that she discovered that Keith Bassette, a Detention Center employee, removed an inmate from the Detention Center without a court order.  Plaintiff contends that she complained about this incident to Defendant Pyle.  Defendant Pyle allegedly did not address the complaint noting that "Bassette was the Sheriff's 'golden child' and there was nothing that could be done." *Id*. at ¶21.  Bassette had also purportedly made "crude and offensive remarks during an employee interview.  Lance Pyle was informed, but no reprimand was forthcoming." *Id*.

Moreover, Plaintiff received a letter from Defendant Pyle dated August 12, 2009 which she claims stated that: 1) Plaintiff had not developed a management team; 2) there was significant staff turnover in the past eight months; 3) recruiting employees had been difficult; 4) there had been "'an enormous release from'" the Detention Center; and 5) Defendant Pyle was getting pressure from the community and the Board regarding the conditions at the Detention Center.  *Id*. at ¶24.  The letter apparently ended by stating that Plaintiff had 30 days to submit to Defendant Pyle a plan "'on how [Plaintiff was] going to turn this facility around, develop [her] management team and staff.  This plan needs to be implemented and in place before November 1, 2009.'"  *Id*. Plaintiff alleges that other similarly situated Curry County Detention Administrators were not reprimanded in this way, and that she was not given 30 days to implement a plan[2] nor was she given the resources to implement a plan.  Plaintiff further contends that during her short tenure as Curry County Detention Administrator, she rectified several outstanding problems at the Detention Center.  *See* Complaint at ¶23 (less employee turnover; Detention Center was cleaned; "[p]roper nutrition and medication was given to the inmates;" "excessive over-time was addressed;" "a disciplinary process with due process protections" was instituted; and "a classification policy was adopted.").

On September 9, 2009, the Curry County Administrator, Plaintiff's supervisor, informed Plaintiff that she was being terminated allegedly "because an employment candidate (white male) for an Assistant Administrator position stated that he did not want to work with Plaintiff because she was black."  *Id*. at ¶26.  Plaintiff was replaced by a Hispanic male who later resigned.  The

---

[2]If Plaintiff's plan was due 30 days after the August 12, 2009 date of the letter, i.e., on September 12, 2009, then Plaintiff had more than 30 days to implement a plan prior to November 1, 2009.

next two Curry County Detention Administrators were white males.  Plaintiff alleges that although the subsequent administrators were given financial resources and training for officers, the Detention Center has continued to deteriorate.  Additionally, Plaintiff notes that the only person disciplined for an eight inmate escape prior to Plaintiff's employment was an African-American jailer.  Finally, Plaintiff maintains that "[t]he Curry County Commissioners individually and collectively have ratified and approved of the actions of Caleb Chandler and Lance Pyle."  *Id*. at ¶33.

   2. *Counts Raised in the Complaint*

   In Count I, Plaintiff alleges that the Board and Defendants Curry County Commissioners Sandoval, Stoddard, Blackburn, Bostwick, and Chandler, in their official capacities, violated Title VII by unlawfully terminating her based on race.  Plaintiff contends in Count II that Defendants Sandoval, Stoddard, Blackburn, Bostwick, Chandler, and Pyle, all in their individual capacities, violated 42 U.S.C. §1981 by unlawfully terminating her employment contract on the basis of race.  In Count III, Plaintiff brings a 42 U.S.C. §1983 claim against all of the Defendants for allegedly violating the Fourteenth Amendment by discriminating against her based on race. Next, Plaintiff, in Count IV, brings another §1983 claim against all Defendants for allegedly violating the Fourteenth Amendment by defaming her character and reputation.  In Count V, Plaintiff alleges that the Board and all of the individual Defendants "in either their professional or personal capacity" violated 42 U.S.C. §1985(3) by conspiring to deny her "the rights and privileges protected by the Constitution of the United States and in doing so have violated provisions of the Fourteenth Amendment...."  Complaint at ¶62.  Plaintiff alleges in Count VI a state promissory estoppel claim against the Board and Defendants Sandoval, Stoddard, Blackburn, Bostwick, and Chandler, in their official capacities, based on promises Defendant

Pyle, an authorized agent of the Board, made that the Board would completely support Plaintiff and provide all reasonably requested staff and materials.  Finally, in Count VII, Plaintiff contends that the Board and all of the individual Defendants "in either their professional or personal capacity" committed a *prima facie* tort against her.  *Id*. at ¶74.

Defendants move under Fed. R. Civ. P. 12(b)(6) to dismiss with prejudice Counts II through VII.  Plaintiff opposes the Motion to Dismiss for two reasons.  First, Plaintiff notes that Defendants failed to comply with D.N.M. LR-Civ. 7.1(a) which requires a movant to "determine whether a motion is opposed, and a motion that omits recitation of a good-faith request for concurrence may be summarily denied."  Second, Plaintiff argues that Counts II through VII survive a Rule 12(b)(6) attack because those Counts state plausible claims upon which relief can be granted.

*B.  Standard of Review*

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  In ruling on a Rule 12(b)(6) motion to dismiss, the Court accepts all well-pleaded allegations as true and views them in the light most favorable to the plaintiff. *See Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir.1984). Rule 12(b)(6) requires that the complaint set forth the grounds of plaintiff's entitlement to relief through more than labels, conclusions and a formulaic recitation of the elements of a cause of action. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While the complaint does not need to include detailed factual allegations, "factual allegations must be enough to raise a right to relief above the speculative level."  *Id.* In other words, dismissal of a complaint under Rule 12(b)(6) is proper only where it is obvious that the plaintiff failed to set forth "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. ___, 129 S.Ct. 1937, 1949 (2009)(citations omitted).

*C. Discussion*

   *1.  D.N.M. LR-Civ. 7.1(a)*

   Plaintiff argues first that the Motion to Dismiss should be denied because Defendants

failed to comply with Local Rule 7.1(a)'s mandate that movants determine whether a motion is

opposed and that movants include a "recitation of a good-faith request for concurrence" in the

motion.  Plaintiff cites to *Negrete v. Maloof Distributing L.L.C.*, 2006 WL 4061178 (D.N.M.), an

unpublished district court case, to support her argument that a violation of Local Rule 7.1(a)

should result in a summary denial of the Motion to Dismiss.  Although the district court judge in

*Negrete* noted that "noncompliance [with Local Rule 7.1(a)] justifies summary denial of its

motion," the district court judge, nonetheless, proceeded to decide if the district court indeed had

jurisdiction to hear the case.  *Id*. at *4-5.  Here, Defendants clearly failed to comply with Local

Rule 7.1(a) when they filed the Motion to Dismiss.[3]  However, as in *Negrete*, the Court believes

that it is in the interests of the parties not to summarily deny the pending Motion to Dismiss for

failure to comply with Local Rule 7.1(a).  Even so, the Court reminds the Defendants to comply

---

[3]Interestingly, on June 2, 2010, a few weeks after Defendants filed the Motion to Dismiss on May 11, 2010 and about a week after Plaintiff filed Plaintiff's Response to "Defendants' Motion to Dismiss" (Doc. No. 9), Defendants "contacted counsel for the Plaintiff to determine whether the Defendants' Motion to Dismiss was opposed.  Counsel for the Plaintiff indicated that indeed, the Defendants' Motion to Dismiss is opposed."  Defendants' Notice of Compliance with Local Rule (Doc. No. 13), filed June 3, 2010.

with Local Rule 7.1(a) in the future to avoid any possibility of having a motion summarily denied.

> 2. *Count III (§1983 racial discrimination claim based on Fourteenth Amendment violation) and Count V (§1985(3) civil conspiracy claim based on Fourteenth Amendment violation)*

Defendants argue next that the Count III §1983 claim based on racial discrimination and the Count V §1985(3) claim for civil conspiracy are preempted by the Title VII claim brought in Count I. Defendants further contend that the Court should dismiss Counts III and V because Plaintiff has failed to state plausible §§1983 and 1985(3) claims based on Fourteenth Amendment violations.

> a. *Count III (§1983 racial discrimination claim based on Fourteenth Amendment violation)*

Although "[i]t is true that a right created solely under Title VII cannot serve as the basis for an independent remedy under Section 1983, lest Congress' prescribed remedies under Title VII be undermined," a plaintiff can maintain a §1983 cause of action "regardless of Title VII's concurrent application," if the "plaintiff can show a constitutional violation by someone acting under color of state law." *Starrett v. Wadley*, 876 F.2d 808, 813-14 (10th Cir. 1989). *See also Polson v. Davis*, 895 F.2d 705 (10th Cir. 1990)("a plaintiff may base a section 1983 claim on actions proscribed by Title VII where those actions also violate the United States Constitution.")(internal quotation marks omitted). Here, Plaintiff alleges in Count III that Defendants, state actors, violated the Fourteenth Amendment by racially discriminating against her. Plaintiff, therefore, alleges in Count III a §1983 claim separate from the Title VII claim in Count I. Hence, Title VII does not preempt the Count III §1983 claim.

Defendants, however, assert that even if Plaintiff alleges a separate §1983 claim based on a violation of the Fourteenth Amendment, she fails to state a plausible Fourteenth Amendment claim which can withstand dismissal under Rule 12(b)(6).  Defendants are correct.  First, Plaintiff fails to indicate in the Complaint which rights Defendants violated under the Fourteenth Amendment, i.e., the right to substantive due process, the right to procedural due process, or the right to equal protection.  Although the Court could speculate that Plaintiff is probably trying to bring a Fourteenth Amendment equal protection claim, the Court is not permitted to do so when examining the Complaint under Rule 12(b)(6).  Second, Plaintiff does not delineate which actions amounted to a Fourteenth Amendment violation.  Again, the Court cannot speculate or guess which specific factual allegations support a Fourteenth Amendment claim. Count III is simply speculative as well as conclusory.  Consequently, Count III fails to state a plausible §1983 claim based on an alleged Fourteenth Amendment violation related to racial discrimination.  The Court will, however, dismiss Count III without prejudice because Plaintiff might have avoided a Rule 12(b)(6) dismissal had she more carefully pled the Fourteenth Amendment claim.[4]

>  b. *Count V (§1985(3) civil conspiracy claim based on Fourteenth Amendment violation)*

Section 1985(3) provides for the recovery of damages when two or more persons conspire to deprive that "person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws...."  In the non-federal employee context, the United

---

[4]"Generally, dismissals of claims for failure to state a claim upon which relief may be granted are without prejudice," because the defect addressed by Rule 12(b)(6) may be curable. *Buchanan v. Oklahoma*, ___ F.Supp.2d ___, 2010 WL 1449603 *4 (W.D. Okla.); *Douglas v. Hilligoss*, ___ F.Supp.2d ___, 2010 WL 1329075 *2 (W.D. Okla.)(citing *Curley v. Perry*, 246 F.3d 1278, 1282 (10th Cir. 2001)).  "A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006).

States Supreme Court in *Great American Federal Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366 (1979) held that the rights created by Title VII cannot be asserted within the remedial framework of §1985(3).  *Novotny*, however, is distinguishable from cases, like this one, where the plaintiff is alleging a separate constitutional claim through §1985(3) in addition to a Title VII claim.  *See Owens v. Rush*, 654 F.2d 1370, 1380 n. 12 (10th Cir. 1981).  *See also Dickerson v. Alachua County Com'n*, 200 F.3d 761, 766-67 (11th Cir. 2000)(Title VII does not preempt §1985(3) claim if that claim is based on the Fourteenth Amendment right to equal protection of the law and due process); *Southard v. Texas Bd. of Criminal Justice*, 114 F.3d 539, 548-49 (5th Cir. 1997).  Title VII, therefore, does not preempt Plaintiff's §1985(3) claim based on the separate constitutional allegation that Defendants violated her Fourteenth Amendment rights.

However, Defendants also argue that Plaintiff has failed to state a plausible §1985(3) civil conspiracy claim based on a Fourteenth Amendment violation because she only asserts vague and conclusory factual allegations.  To state a plausible §1985(3) claim, the Plaintiff must allege sufficient facts to establish "(1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom."  *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993)(citing *Griffin v. Breckenridge*, 403 U.S. 88 at 102-03 (1971)).  Instead of providing specific factual allegations to support each element of a conspiracy claim, Plaintiff provides a conclusory and formulaic-type recitation that "Defendants, alternatively in either their professional or personal capacity, have conspired to deny the Plaintiff the rights and privileges protected by the Constitution of the United States and in doing so have violated provisions of the Fourteenth Amendment of the United States Constitution, and is therefore entitled to pursue remedies under 42 U.S.C.A. §1985."  Complaint at ¶62.  Even viewing the factual allegations in the Complaint in

11

their entirety and accepting them as true, the Court concludes that the factual allegations in this case fail to support a plausible §1985(3) conspiracy claim.  Because Plaintiff's factual allegations do not even hint at the possibility of a conspiracy claim, the Court believes that this claim cannot be cured by amendment and will, therefore, dismiss Count V with prejudice under Rule 12(b)(6).

      *3.  Count IV (§1983 defamation claim based on violation of Fourteenth Amendment)*

      Defendants further argue that Count IV's §1983 defamation claim premised on an alleged violation of the Fourteenth Amendment should be dismissed for failure to state a plausible Fourteenth Amendment claim.  The due process clause of the Fourteenth Amendment mandates that no state "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. Amend. XIV, §2.  Employees "have a liberty interest in [their] good name and reputation as it affects [their] protected property interest in continued employment."  *Workman v. Jordan*, 32 F.3d 475, 480 (10th Cir. 1994).  Consequently, the Fourteenth Amendment due process clause is violated when an employee's liberty interest in the employee's good name and reputation is deprived without due process of law.

      Defamation alone is not sufficient to establish a claim for deprivation of a liberty interest under the Fourteenth Amendment.  *Paul v. Davis*, 424 U.S. 693, 708-10 (1976).  To establish a deprivation of the liberty interest in good name and reputation, a plaintiff must meet the Tenth Circuit's four-part "stigma-plus" test:

> First, to be actionable, the statements must impugn the good name, reputation, honor, or integrity of the employee.  Second, the statements must be false.  Third, the statements must occur in the course of terminating the employee or must foreclose other employment opportunities.  And fourth, the statements must be published.

*Workman*, 32 F.3d at 481 (citations omitted).

Plaintiff contends that several alleged facts meet the stigma-plus test. First, Plaintiff refers to her allegation that Defendant Chandler told relatives employed at the Detention Center not to listen to her or do anything she told them to do; and that Defendant Chandler continuously challenged her authority.  Second, Plaintiff refers to her contention that Defendant Chandler rudely told her at a jail committee meeting that "no one is talking to you."  Third, Plaintiff refers to the assertion that Defendant Chandler made false allegations at a public meeting regarding employee turnover at the Detention Center.  Fourth, Plaintiff refers to allegations that Defendant Chandler told Defendant Pyle that he did not like a woman operating the Detention Center, that Defendant Chandler said that he did not think a woman could operate a Detention Center, and that Defendant Chandler wanted Plaintiff fired and to have the Curry County Sheriff's Department operate the Detention Center.  Fifth, Plaintiff refers to the assertion that she was fired because an applicant for assistant administrator did not want to work with an African-American. And, sixth, Plaintiff refers to her contention that Defendant Pyle made false allegations in the August 12, 2009 letter.

Assuming that Defendant Chandler's statements to relatives employed at the Detention Center, his statements at public meetings, and his statements regarding the ability of a woman to operate a detention center impugned Plaintiff's good name and reputation, and were false, only the statements made at public meetings could be considered "published" to the public.  *See Harris v. Blake*, 798 F.2d 419, 422 n.2 (10th Cir. 1986)(defamatory statements must be disseminated to the public; intra-governmental dissemination is not the equivalent of a public dissemination).  While the alleged statements at public meetings may have been demeaning and false, Plaintiff does not allege that they were made in the course of terminating her or that the

statements had anything to do with the manner or reasons for her termination.[5]  Rather, Plaintiff

alleges she was terminated because the applicant for assistant administrator did not want to work

with an African-American.

Next, the Court has difficulty understanding how the purported statement by the Curry

County Administrator that Plaintiff was terminated because the applicant for assistant

administrator did not want to work with an African-American impugns Plaintiff's good name and

reputation.  That statement does not, for example, attack Plaintiff's character or integrity which if

sullied would be hard to satisfactorily explain or justify to a future employer.  *See Asbill v.*

*Housing Authority of Choctaw Nation of Oklahoma*, 726 F.2d 1499, 1503 (10th Cir. 1984)(citing

*Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 573 (1972)).  Instead, the statement

acknowledges that Plaintiff is African-American and demonstrates the racist belief of the

applicant for administrative assistant, matters easily explained to a future employer.  In addition,

there is no allegation in the Complaint that this alleged reason for termination was published to

the public.

Finally, Defendant Pyle's statements in the August 12, 2009 letter, even if considered to

impugn Plaintiff's good name and reputation, and to be false, are not alleged to be the reason for

Plaintiff's termination.  As already indicated, Plaintiff alleges specifically that she was terminated

because an applicant for assistant administrator did not want to work with an African-American.

Moreover, Plaintiff does not allege that the August 12, 2009 letter was published to the public.  In

sum, even if Plaintiff has successfully alleged a claim of defamation, defamation alone is not

---

[5]Although Plaintiff does not specifically contend that the alleged defamation foreclosed
future employment opportunities, the Court notes that a liberty interest cannot "be infringed by
any defamatory statement that might foreclose future employment opportunities."  *Renaud v.
Wyoming Dept. of Family Services*, 203 F.3d 723, 728 n.1 (10th Cir. 2000).

enough to establish a deprivation of a liberty interest protectible by the Fourteenth Amendment due process clause.  Plaintiff has failed to meet the stigma-plus test and so she has failed to allege sufficient facts to state a plausible §1983 claim based on defamation.  The nature of Plaintiff's factual allegations regarding the §1983 defamation claim persuade the Court that it would be futile to amend that claim.  Count IV will, therefore, be dismissed with prejudice under Rule 12(b)(6).

   *4.  Count II (§1981)*

   Defendants further assert that Plaintiff has failed to state a plausible §1981 claim because she did not have an enforceable written employment contract with Curry County and the factual allegations do not support a §1981 claim.  "Section 1981 forbids all intentional racial discrimination in the making or enforcement of private or public contracts.  In particular, §1981 protects employees from racial discrimination both in entering into an employment contract and in enjoying the benefits, privileges, terms and conditions of employment."  *Exum v. U.S. Olympic Committee*, 389 F.3d 1130, 1134 (10th Cir. 2004)(citations omitted).  This means that "[s]ection 1981 ... clearly prohibits discriminatory conduct that occurs both before and after the establishment of the contractual relationship."  *Perry v. Woodward*, 199 F.3d 1126, 1132 (10th Cir. 1999).  In New Mexico, an at-will employee without a written employment contract, nonetheless, has a contractual relationship with an employer because the employee rendered services in exchange for wages.  *Id*. at 1133.  This contractual relationship is subject to the protections of  §1981.  *Id*.  Consequently, although Plaintiff did not have a written employment contract with the Curry County, §1981 protects her employment relationship from racial discrimination.

Next, although Plaintiff alleges in the Complaint that the individual Defendants violated §1981 by terminating her on the basis of race, the individual Defendants claim that the Complaint does not contain a plausible §1981 claim because Plaintiff does not allege facts which demonstrate that those Defendants directed or ordered Plaintiff's termination.  *See Flores v. City and County of Denver*, 30 Fed. Appx. 816 819 (10th Cir. 2002)(unpublished decision)("an individual defendant can be held liable under §1981 if the individual defendant was personally involved in the discriminatory conduct.")(emphasis added).  Plaintiff, however, contends that the following factual allegations demonstrate that the individual Defendants terminated her: the only person disciplined for an eight inmate escape prior to Plaintiff's employment was an African-American jailer; the interview team included Defendant Sandoval; Defendant Chandler continuously challenged Plaintiff's authority; Defendant Chandler did not like African-Americans and females; Defendant Chandler wanted Plaintiff fired; Defendant Chandler made false statements about Plaintiff in a public meeting to get her to quit her job; Defendant Chandler stated that he did not want a woman running the Detention Center and that a woman could not run the Detention Center; Defendant Pyle stated in the August 12, 2009 letter that he was "getting a lot of pressure from the Community and the County Commissioners regarding the condition and the situations that are occurring at the Detention Center;" and that Defendants Sandoval, Stoddard, Blackburn, and Bostwick ratified and approved the actions of Defendants Chandler and Pyle.  Complaint at ¶¶ 8, 10, 13, 17, 18, 19, 22, 24, and 33.  Even accepting those factual allegations as true, nowhere in the Complaint does the Plaintiff allege who actually terminated her.  For example, did the Board, upon a motion, vote to terminate Plaintiff?  If so, which County Commissioners voted to terminate Plaintiff and what was the basis for the motion to terminate Plaintiff?  Did Defendant Pyle terminate Plaintiff or did her supervisor, the County

16

Administrator, terminate her?  Also, what role did Defendant Pyle play in terminating Plaintiff if he did not actually terminate her?  Did Defendant Pyle recommend to the County Commissioners to terminate Plaintiff and on what basis?  Was there a letter of termination and if so, who wrote it and what did it say?  Without more specific allegations, the Court is left with mere speculation as to which individual Defendants were "personally" involved in the alleged discriminatory termination.  Because the Court cannot determine from the current factual allegations whether Plaintiff might have a plausible §1981 claim against the individual Defendants, the Court concludes it would be unduly harsh to dismiss that claim with prejudice and instead will dismiss it without prejudice.[6]

> ### 5.  *Qualified Immunity as to Counts II (§1981), III (§1983: race discrimination), IV (§1983: defamation), and V (§1985(3))*

The individual Defendants further argue that they are entitled to the defense of qualified immunity with respect to Counts II (§1981), III (§1983: race discrimination), IV (§1983: defamation), and V (§1985(3)).  Because the Court has already decided that Plaintiff has not stated plausible §§1981, 1983 and 1985(3) claims, and that those claims are, therefore, subject to dismissal under Rule 12(b)(6), it is unnecessary for the Court to address whether those claims should also be dismissed under qualified immunity.[7]  *See Phillips v. Bell*, 365 Fed. Appx. 133,

---

[6]The Court notes that "damages claims against a state actor for §1981 violations must be brought under §1983."  *Bolden v. City of Topeka, Kan.*, 441 F.3d 1129, 1137 (10th Cir. 2006).  Here, the Court liberally construed the Complaint to incorporate the §1981 claim into Plaintiff's §1983 claims.  However, because the Court intends to dismiss the §1983 claims, the §1981 claim cannot not survive on its own as an independent claim.  *See id*.

[7]In Defendants' Reply to Plaintiff's Response to Defendants' Motion to Dismiss (Doc. No. 15, Defendants contend that the individual Defendants are absolutely immune under §1983 for legislative activities.  The Court questions whether a decision to terminate, an administrative-type decision, would be equated with a legislative activity.  Nonetheless, as the Court has already indicated, Counts II, III, IV, and V will be dismissed under Rule 12(b)(6).

143 (10th Cir. 2010)(unpublished decision)("Having determined Ms. Phillips's claims are insufficient to state a claim for relief for the purpose of surviving Appellants' motion to dismiss, we need not address the issue of qualified immunity.").

  6.  *Count VI (State Law Claim of Promissory Estoppel)*

     Plaintiff's state law promissory estoppel claim is based on the alleged promise by Defendant Pyle, as an authorized agent of the Board, that the Board would completely support Plaintiff in the performance of her job.  Defendants argue that Plaintiff cannot allege a plausible promissory estoppel claim because she did not have a valid written employment contract with a governmental entity.  1978 NMSA, §37-1-23(A)(1976) provides that "[g]overnmental entities are granted immunity from actions based on contract, except actions based on a valid written contract."  Plaintiff argues, on the other hand, that a promissory estoppel claim does not need to arise from an underlying contract.[8]

     *Trujillo v. Gonzales*, 106 N.M. 620, 747 P.2d 915 (1987) is instructive on the application of §37-1-23(A) in the context of a promissory estoppel claim.  In *Trujillo*, two county commissioners orally promised plaintiff that if he accepted employment at the county his employment would be guaranteed for two years.  Plaintiff relied on the two year guarantee of employment when he decided to leave his old job and accept employment at the county.  However, when the county board of commissioners ratified the decision to hire plaintiff, the

---

     [8]"[T]he essential elements of promissory estoppel are: (1) An actual promise must have been made which in fact induced the promisee's action or forbearance; (2) The promisee's reliance on the promise must have been reasonable; (3) The promisee's action or forbearance must have amounted to a substantial change in position; (4) The promisee's action or forbearance must have been actually foreseen or reasonably foreseeable to the promisor when making the promise; and (5) enforcement of the promise is required to prevent injustice."  *Strata Production Co. v. Mercury Exploration Co.*, 1996-NMSC-016, 121 N.M. 622, 628.

county board of commissioners made plaintiff's employment at-will.  The ratification was

reflected only in the written minutes of the meeting of the county board of commissioners.  The

county subsequently terminated the plaintiff before he had completed two years of employment.

"The dispositive issue [was] whether the court erred by granting defendants' motion to dismiss

based upon its determination that Trujillo failed to allege a valid written employment contract

with the county in order to be excepted from the provisions of NMSA 1978, Section 37-1-23....'"

*Trujillo*, 106 N.M. at 621, 747 P.2d at 916.

In deciding that the trial court did not err in granting the motion to dismiss based on §37-

1-23 immunity, the New Mexico Supreme Court noted that plaintiff argued alternatively that

"defendants are estopped from denying the existence of a valid two-year employment agreement

and asserting the provisions of Section 37-1-23 to deny contractual liability."  *Id*. at 622, 747

P.2d at 917.  The New Mexico Supreme Court found "no merit to [plaintiff's] equitable argument

because the language of the applicable statute is clear. [Plaintiff] had no right to rely on the oral

representations made to him here."  *Id*.  *See also Campos de Suenos, Ltd. v. County of*

*Bernalillo*, 2001-NMCA-043 ¶¶32 and 32, 130 N.M. 563 (applying *Trujillo* and finding that

promissory estoppel did not apply when plaintiff relied "extensively on statements of county

officials, including individual commission members, which allegedly took place outside of any

duly constituted meeting of the County Commission.").  The Court concludes that *Trujillo* is

controlling in this case, and that §37-1-23(A) necessarily precludes Plaintiff from stating a

promissory estoppel claim without the promise at issue having been committed to writing.  Since

Count VI fails to state a claim as a matter of law and could not be cured by amendment, Count VI

will be dismissed with prejudice under Rule 12(b)(6).

7. *Count VII (State Claim of Prima Facie Tort)*

Finally, Defendants contend that Plaintiff cannot bring a *prima facie* tort claim against a governmental entity or its employees because the New Mexico Tort Claims Act (NMTCA) does not waive sovereign immunity for that tort.  It is well-established that "[g]overnmental entities and public employees, while acting within the scope of duty, are granted immunity from liability from tort except as waived by the specific provisions of the Tort Claims Act."  *Derringer v. State*, 2003-NMCA-073 ¶16, 133 N.M. 721.  Furthermore, "[p]rima facie tort is not included in the specific provisions of the Tort Claims Act and, therefore Defendants enjoy immunity from Plaintiff's claim."  *Id*.  Plaintiff assert, however, that she is bringing a *prima facie* tort action against Defendants in their individual capacities for acts they committed outside the scope of their official duties.  For example, Plaintiff contends that the purportedly false allegations against her and Defendant Chandler's alleged remarks to Defendant Pyle that he did not like a woman operating the Detention Center and that he did not think a woman could operate the Detention Center are all actions committed outside the scope of official county duties.

The NMTCA defines the term "scope of duty" as the performance of "any duties that a public employee is requested, required or authorized to perform by the governmental entity, regardless of the time and place of performance."  1978 NMSA §41-4-3(G)(1976).  "'[A] public employee may be within the scope of authorized duty even if the employee's acts are fraudulent, intentionally malicious, or even criminal.'"  *Henning v. Rounds*, 2007-NMCA-139 ¶22, 142 N.M. 803 (quoting *Seeds v. Lucero*, 2005-NMCA-067 ¶10, 137 N.M. 589).  Hence, even if a defendant has a "wrongful motive," that motive "'is simply irrelevant, as long as there is a connection between the public employee's actions at the time of the incident and the duties the public employee was requested, required or authorized to perform.'"  *Id*. at ¶22 (quoting *Seeds*, 2005-

20

NMCA-067 ¶10).

To begin with, the Court observes that Plaintiff fails to specify in the Complaint which actions constitute a *prima facie* tort. Plaintiff simply provides a formulaic recitation of the elements of the cause of action. *See* Complaint at ¶¶74 and 75. *See also Schmitz v. Smentowski*, 109 N.M. 386, 394, 785 P.2d 726, 734 (1990)(listing elements for a *prima facie* tort action). The *prima facie* tort claim should, therefore, be dismissed for failure to state a plausible claim for this reason alone.

Nonetheless, the Court concludes that the claim of false allegations and Defendant Chandler's alleged comments to Defendant Pyle about women operating the Detention Center constitute actions taken within the scope of duty of the respective individual Defendants. The Court assumes that the false allegations Plaintiff refers to include Defendant Chandler's remarks in a public meeting of the Board that Detention Center employees were leaving their employment because of Plaintiff, and the content of Defendant Pyle's August 12, 2009 letter. Certainly, Defendant Chandler's alleged comments at a Board meeting are connected to his authorized duties as a Curry County Commissioner. Likewise, Defendant Pyle's August 12, 2009 letter was clearly connected to his authorized duties as county manager dealing with a high level county employee and employment issues. Additionally, although Defendant Chandler's alleged remarks to Defendant Pyle about women operating the Detention Center were offensive, those remarks are also connected to Defendant Chandler's authorized duties as a Curry County Commissioner and chair of the jail committee, and his concomitant prerogative to speak candidly to Defendant Pyle, the county manager, about the operation of a county facility. Because these actions, although distasteful, all come within the definition of "scope of duty," the NMTCA provides immunity with respect to Plaintiff's *prima facie* tort claim. Plaintiff's factual allegations

21

concerning the "scope of duty" fail to convince the Court that the *prima facie* claim could be cured by amendment.  Count VII will, therefore, be dismissed with prejudice under Rule 12(b)(6).

IT IS ORDERED that Defendants' Motion to Dismiss (Doc. No. 4) will be granted in that Counts II and III will be dismissed without prejudice, and Counts IV, V, VI, and VII will be dismissed with prejudice.

_____
SENIOR UNITED STATES DISTRICT JUDGE